IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff | ) | |
| v. | ) | CR. No. 05-022S |
| CHRISTIAN SARRIA<br>Defendant | ) | |

## TRIAL MEMORANDUM

## I. INTRODUCTION

The United States submits this Trial Memorandum to assist the Court with scheduling, legal matters, and evidentiary issues, which, in the government's view, are likely to arise in connection with trial in the above captioned case. We anticipate that the trial will take no more than one week to complete. At this time, the government anticipates it will call approximately eight witnesses.

## II. THE INDICTMENT

Defendant is charged with three counts of knowingly possessing and attempting to pass counterfeit notes, in violation of 18 U.S.C § 472. The first count refers to Defendant's attempt to pass twenty counterfeit Federal Reserve Notes in the denomination of one hundred dollars at the Citizen's Bank located at 270 Academy Avenue, Providence, Rhode Island. The second count

refers to Defendant's possession, in his vehicle, of seventeen counterfeit one hundred dollar bills. The third count refers to Defendant's possession, in his residence, of 148 counterfeit one hundred dollar bills.

## III. THE ELEMENTS

18 U.S.C. § 472 makes it unlawful to possess, pass, or attempt to pass, with intent to defraud, any counterfeit United States Federal Reserve Notes. Defendant can be found guilty of this offense in the United States proves the following beyond a reasonable doubt:

1) defendant did or attempt to pass, utter, possess, or conceal;
2) a falsely made or counterfeit obligation or security of the U.S.; and
3) defendant knew that the notes were counterfeit, and
4) defendant acted with the intent to defraud.

## IV. THE EVIDENCE

On or about February 10, 2005, Secret Service was notified by the branch manager for the Citizen's Bank branch located at 270 Academy Avenue, Providence, Rhode Island, that a customer by the name of Cristian A. Sarria ("SARRIA"), attempted to exchange $2,000.00 in counterfeit one-hundred dollar bills, for $2,000.00 in twenty dollar bills. SARRIA arrived at the bank between 2 and 3 p.m. SARRIA went to one of the tellers and, using his Citizen's Bank ATM card, withdrew $6700.00 from his savings account. The money was given to him in three packets of $2000 each containing twenty (20) one-hundred-dollar bills, and seven (7) one-

Shortly thereafter, Secret Service Agent Peter Cote arrived at the bank. He examined the bills and recognized the bills to be counterfeit. Agent Cote relayed some of the characteristics of the bills to investigative assistants at the Secret Service and they confirmed that, in fact, the bills were counterfeit. Agent Cote also examined the currency found in the defendant's car and determined that fourteen one-hundred dollar bills ($1400.00) were genuine, but that seventeen one-hundred dollar bills ($1700.00) were counterfeit. The counterfeit bills were the same as the bills passed to the teller.

While at the bank, Agent Cote obtained written consent from SARRIA and SARRIA's wife (who was called to the bank by the Defendant) to search the car and to search Defendant's house, 1 Doyle Street, Johnston, Rhode Island. Ms. Christine Sarria translated the forms for SARRIA. A second search of the vehicle did not yield any additional evidence. Secret Service Agents John Petricig and Al Evora responded to 1 Doyle Street, a single family home, to conduct the search. Ms. Sarria was present at the time. During this initial search, no additional contraband was seized.

SARRIA was transported from Citizen's Bank to the Providence Police Central Station. At that time, he was advised of his Miranda Rights by Agent Cote and Detective Emilio Matos who is a fluent Spanish speaker. SARRIA also signed a written Miranda Waiver form in the Spanish language. SARRIA stated that on February 6, 2005, he returned to the United States from Cali, Columbia. He stated that, while in Columbia, he sold his house for $13,000.00 in U.S. currency. SARRIA stated that he did not declare this money when his flight landed at John F. Kennedy Airport in Queens, New York. SARRIA denied knowing that the currency was

counterfeit. SARRIA also stated that he had additional currency under his mattress at his house in Johnston. Based on this information, Agents Petricig and Evora returned to 1 Doyle Street. They asked Ms. Sarria if they could look under the mattress. Ms. Sarria informed them that she had moved the money from under the mattress to the backyard. Ms. Sarria led them to the location where the cash was hidden. Agents Petricig and Evora then seized about $14,800.00 in one-hundred dollar bills, wrapped in several plastic bags, from the backyard. Agent Cote examined the bills seized from SARRIA's residence and determined that they were all counterfeit, and of the same origin, as the bills passed in the bank and found in the car.

During the booking at the Providence Police Department, SARRIA's wallet was inventories. He had over $800.00 in legitimate U.S. Currency. However, there was also a counterfeit twenty dollar bill. This bill was of different quality than the other counterfeit currency seized in connection with this investigation. When Agent Cote showed SARRIA this bill, SARRIA immediately stated, prior to his identifying the bill as counterfeit, "my Columbian friend gave it to me."

## V. ANTICIPATED ISSUES

### 1. Expert Testimony

The government intends to offer the testimony of an expert in counterfeit currency who is employed by the United States Secret Service. Proper expert notice has been served on the defendant. Rule 702 of the Federal Rules of Evidence authorizes the presentation of expert opinion testimony in cases in which "scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. In this case, the expert will be asked to identify the features of the counterfeit notes that distinguishes them from genuine notes. This information is one that requires the expert's technical knowledge and expertise, and would assist the jury in determining whether or not the currency in question is counterfeit.

The government has also received expert notice from the defendant regarding the issue of the exchange rate of Columbian pesos to American dollars at the relevant time frame. The government's research has yielded substantially the same exchange rate as that provided by defendant's expert. The government is prepared to stipulate to the exchange rate. Such a stipulation would obviate the necessity of a witness on this point.

2. 404(b) Evidence

The government intends to introduce into evidence the counterfeit $20 bill seized from Defendant's wallet at the time of his arrest. This counterfeit currency was not charged in the Indictment. The government does not believe that this piece of evidence constitutes 404(b) because it is inextricably intertwined with the facts of this case. If the Court disagrees, the government nonetheless believes that this evidence should be admitted under 404(b) because it is probative of defendant's knowledge and absence of mistake that the money in his possession was counterfeit. Finally, this evidence is not unduly prejudicial: the introduction of $20 in counterfeit currency at a trial involving $18,500 in counterfeit currency is not likely to inflame the jury.

Rule 404(b) of the Federal Rules of Evidence states:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The trial judge should undertake a two-step analysis for determining whether prior crimes evidence is admissible under Rule 404(b).

> "First, the trial court must determine that the evidence has some 'special' relevance; that is, whether the evidence is offered to establish some material issue such as intent or knowledge or is offered solely, and impermissibly, to establish the defendant's propensity for crime. Second, the trial court must balance the special probative value of the evidence against the danger of unfair prejudice to the defendant, using the considerations underlying Rule 403."

United States v. Gonzalez-Sanchez, 825 F.2d 572, 579 (1st Cir.), cert. denied, 108 S.Ct. 510 (1987). To exclude 404(b) evidence, the prejudice must substantially overbalance any probative value--a significant tipping of the scales against the evidentiary worth of the other crimes evidence. United States v. Devin, 918 F.2d 280, 286 (1st Cir. 1990). The fact that a juror may also make character inferences from Rule 404(b) evidence does not mean that such evidence is inadmissible under the first step of the test. United States v. Nickens, 955 F.2d 112 (1st Cir. 1992); United States v. Ferrer-Cruz, 899 F.2d 135 (1st Cir. 1990). In addition to those purposes specifically identified in Rule 404(b), such evidence has been admissible to complete the story of the crime on trial and place it in its proper context. See, e.g., United States v. Gonzales, 661 F.2d 488, 493-94 (5th Cir.1981) (evidence relevant to a transaction not charged in the indictment but

occurring within the dates alleged in the indictment completed the account of the entire incident; not an "other" act); United States v. Killian, 639 F.2d 206, 211 (5th Cir.1981) (introduction of pistols and cocaine retrieved from defendant's house after arrest for charged offense of possession of cocaine inextricably intertwined with evidence of the charged transaction); United States v. Aleman, 592 F.2d 881, 885 (5th Cir.1979) (policy of Rule 404(b) "simply inapplicable when some offenses committed in single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions").

In this case, defendant possessed the counterfeit $20-bill at the same time he possessed numerous counterfeit $100 bills. The "coincidence" is striking. Further, Defendant's statement to the police at the time he was shown the $20-bill indicates that he knew that the bill was counterfeit. Immediately upon being shown this bill, Defendant told the police that his "Columbian friend" gave it to him. Given the large amount of currency in Defendant's possession at the time, and the fact that the police had not told Defendant that this particular bill was counterfeit, Defendant's statements suggests that he knew he was in possession of counterfeit currency.

VI. REQUESTED VOIR DIRE

The government does not have any requested voir dire questions beyond the usual and customary inquiry conducted by the court.

## VII. JURY INSTRUCTIONS

The government will submit its proposed jury instructions under separate cover prior to the commencement of trial.

## VIII. WITNESS AND EVIDENCE LIST

The government will submit a witness and evidence list under separate cover prior to the commencement of trial.

Respectfully submitted,
UNITED STATES OF AMERICA

ROBERT CLARK CORRENTE
United States Attorney

ADI GOLDSTEIN
Assistant U.S. Attorney

## CERTIFICATION

I hereby certify that on the 21st day of July, 2005 I faxed and mailed a copy of the Government's Trial Memorandum, ordinary mail and postage prepaid, to:

Edward C. Roy, Esq.
10 Weybosset Street, Suite 300
Providence, R.I. 02903